TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
      1200 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-0721
      Facsimile: (213) 894-0141
      E-mail:    John.Lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA


              UNITED STATES DISTRICT COURT

          FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>RAFAEL ENRIQUE GAMEZ SALAS,<br>  aka "Adrian Rafael Gamez Finol,"<br>  aka "Turko,"<br><br>A Fugitive from the Government of the Republic of Chile. | No. 2:26-mj-01311<br><br>UNITED STATES' REQUEST FOR DETENTION PENDING EXTRADITION PROCEEDINGS; [Proposed] ORDER |

1    Plaintiff, United States of America, by and through its counsel

2  of record, the United States Attorney, hereby submits its request for

3  detention pending further extradition proceedings, and a memorandum

4  of points and authorities in support of that request.

5

6  Dated: March 11, 2026            Respectfully submitted,

7                                   TODD BLANCHE
                                     Deputy Attorney General
8
                                     BILAL A. ESSAYLI
9                                    First Assistant United States Attorney

10                                   ALEXANDER B. SCHWAB
                                     Assistant United States Attorney
11                                   Acting Chief, Criminal Division

12

13                                   */s/ John J. Lulejian*
                                     JOHN J. LULEJIAN
14                                   Assistant United States Attorney

15                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
16

17

18

19

20

21

22

23

24

25

26

27

28

2

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                    <u>PAGE</u>

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION..................................................1

II.   PROCEDURAL BACKGROUND.........................................2

III.  ARGUMENT.....................................................2

      A.    Applicable Law.........................................3

            1.    A Strong Presumption Against Bail Governs in an
                  International Extradition Proceeding.............3

            2.    Fugitives Must Be Detained Unless They Establish
                  "Special Circumstances" and Demonstrate that They
                  Are Neither a Flight Risk nor a Danger to the
                  Community........................................5

      B.    Analysis...............................................8

            1.    GAMEZ SALAS Cannot Meet His Burden of Proving
                  that He Is Neither a Flight Risk nor a Danger to
                  the Community....................................9

            2.    GAMEZ SALAS Cannot Meet His Burden of
                  Establishing "Special Circumstances" that Justify
                  Bail............................................11

IV.   CONCLUSION..................................................12

CERTIFICATE OF COMPLIANCE..........................................13

**TABLE OF AUTHORITIES**

DESCRIPTION                                                    PAGE

CASES

In re Extradition of Adame,

    No. Misc. No. H-13-287, 2013 WL 1222115

    (S.D. Tex. Mar. 25, 2013)................................... 10

In re Extradition of Antonowicz,

    244 F. Supp. 3d 1066 (C.D. Cal. 2017)................... 5, 7, 8

In re Extradition of Beresford-Redman,

    753 F. Supp. 2d 1078 (C.D. Cal. 2010)..................... 5, 7

In re Extradition of Garcia,

    615 F. Supp. 2d 162 (S.D.N.Y. 2009).......................... 4

In re Extradition of Garcia,

    761 F. Supp. 2d 468 (S.D. Tex. 2010)........................ 10

In re Extradition of Hamilton-Byrne,

    831 F. Supp. 287 (S.D.N.Y. 1992)............................. 7

In re Extradition of Heilbronn,

    773 F. Supp. 1576 (W.D. Mich. 1991)......................... 8

In re Extradition of Kin-Hong,

    913 F. Supp. 50 (D. Mass. 1996).............................. 5

In re Extradition of Knotek,

    No. 13-CV-9204-BRO-JCG, 2016 WL 4726537

    (C.D. Cal. Sept. 8, 2016).................................... 7

In re Extradition of Kyung Joon Kim,

    No. 04-CV-3886, 2004 WL 5782517

    (C.D. Cal. July 1, 2004)................................... 7, 8

In re Extradition of Mainero,

    950 F. Supp. 290 (S.D. Cal. 1996)......................... 5, 6

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

In re Extradition of Martinelli Berrocal,
      263 F. Supp. 3d 1280 (S.D. Fla. 2017).................. 4, 5, 7

In re Extradition of Morrell,
      No. 3:24-MJ-05020-TLF, 2024 WL 756017
      (W.D. Wash. Feb. 23, 2024).................................. 10

In re Extradition of Nacif-Borge,
      829 F. Supp. 1210 (D. Nev. 1993)........................... 6, 8

In re Extradition of Noeller,
      No. 17 CR 664, 2017 WL 6462358
      (N.D. Ill. Dec. 19, 2017).................................... 7

In re Extradition of Orozco,
      268 F. Supp. 2d 1115 (D. Ariz. 2003)......................... 7

In re Extradition of Patel,
      08-430-MJ-HUBEL, 2008 WL 941628
      (D. Or. Apr. 4, 2008)........................................ 6

In re Extradition of Pelletier,
      No. 09-mc-22416, 2009 WL 3837660
      (S.D. Fla. Nov. 16, 2009)................................. 7, 8

In re Extradition of Perez-Cueva,
      No. 16-MJ-0233, 2016 WL 884877
      (C.D. Cal. Mar. 7, 2016).............................. 3, 6, 9

In re Extradition of Rovelli,
      977 F. Supp. 566 (D. Conn. 1997)............................. 8

In re Extradition of Shaw,
      No. 14-MC-81475-WM, 2015 WL 521183
      (S.D. Fla. Feb. 6, 2015)................................... 10

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

In re Extradition of Sidali,
        868 F. Supp. 656 (D.N.J. 1994).................................. 7

In re Extradition of Siegmund,
        887 F. Supp. 1383 (D. Nev. 1995)........................... 6, 8

In re Extradition of Smyth,
        976 F.2d 1535 (9th Cir. 1992)............................... 6, 7

In re Mitchell,
        171 F. 289 (S.D.N.Y. 1909).................................... 3

Jhirad v. Ferrandina,
        536 F.2d 478 (2d Cir. 1976)................................. 10

Jimenez v. Aristiguieta,
        314 F.2d 649 (5th Cir. 1963).................................. 4

Kamrin v. United States,
        725 F.2d 1225 (9th Cir. 1984)................................. 2

Salerno v. United States,
        878 F.2d 317 (9th Cir. 1989)......................... 3, 5, 6, 8

United States ex rel. McNamara v. Henkel,
        46 F.2d 84 (S.D.N.Y. 1912).................................... 4

United States v. Botero,
        604 F. Supp. 1028 (S.D. Fla. 1985).......................... 10

United States v. Kin-Hong,
        83 F.3d 523 (1st Cir. 1996)................................... 6

United States v. Latulippe,
        No. 08-mj-59, 2008 WL 2704230
        (D.N.H. July 3, 2008)......................................... 7

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Leitner,

    784 F.2d 159 (2d Cir. 1986)............................ 3, 6, 7

United States v. Snyder,

    No. 13-7082-mj, 2013 WL 1364275

    (D. Ariz. Apr. 3, 2013)................................. 3, 6

Wright v. Henkel,

    190 U.S. 40 (1903)........................................ 4


STATUTES

18 U.S.C. § 3141 et seq.................................... 2

18 U.S.C. § 3141(a)........................................ 3

18 U.S.C. § 3142........................................... 3

18 U.S.C. § 3156........................................... 3

18 U.S.C. § 3156(a)........................................ 3

18 U.S.C. § 3181 et seq.................................... 2


FOREIGN STATUTES

Chilean Crim. Code, art. 141, § 3......................... 1

Chilean Crim. Code, art. 141, § 5......................... 1

Chilean Crim. Code, art. 293, § 2......................... 1

Chilean Crim. Code, art. 438.............................. 1

Chilean Law No. 17,798, art. 14(d)........................ 1

### TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                    PAGE

TREATIES

Extradition Treaty Between the Government of the United States
     of America and the Government of the Republic of Chile,
     U.S.-Chile, June 5, 2013, T.I.A.S. No. 16-1214................ 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This is an extradition matter.  The Government of the Republic of Chile ("Chile") has submitted to the United States a request for the provisional arrest, with a view toward extradition, of the fugitive, RAFAEL ENRIQUE GAMEZ SALAS, also known as ("aka") "Adrian Rafael Gamez Finol," aka "Turko," ("GAMEZ SALAS" or the "fugitive"), so that he may be prosecuted in Chile for (1) one count of criminal association, in violation of Article 293, section 2, of the Chilean Criminal Code; (2) two counts of extortion, in violation of Article 438 of the Chilean Criminal Code; (3) two counts of unjustified firearm discharge, in violation of Article 14(d) of Chile's Law No. 17,798; (4) one count of kidnapping resulting in homicide, in violation of Article 141, section 5, of the Chilean Criminal Code; and (5) one count of kidnapping for extortion, in violation of Article 141, section 3, of the Chilean Criminal Code. (<u>See</u> Docket No. 1 at ¶ 2.)

As detailed more fully in the Complaint (Docket No. 1), Chilean authorities allege that GAMEZ SALAS was responsible for directly overseeing the criminal activities in Chile of the primary Chilean cell of the Venezuelan transnational criminal organization <u>Tren De Aragua</u> ("TdA"), "<u>Los Piratas</u>," including coordinating the execution of and selecting victims of kidnappings, homicides, extortions, and other offenses, instructing subordinates to obtain necessary resources, such as vehicles and firearms, and ensuring that financial resources generated for <u>Los Piratas</u> were transferred abroad.  Chile alleges, among other things, that GAMEZ SALAS, acting under the supervision of senior TdA leadership, directed and planned the

February 2024 kidnapping and murder in Santiago, Chile, of a former
Lieutenant in the Venezuelan military.  It is also alleged that GAMEZ
SALAS played a leading role in an April 2024 deadly armed
confrontation that killed a Chilean police officer; February and June
2024 kidnappings for extortion; and a March 2024 attempted
kidnapping, among other offenses.

**II.  PROCEDURAL BACKGROUND**

On March 6, 2026, in accordance with its treaty obligations,[1]
the United States filed a Complaint for Provisional Arrest with a
View Toward Extradition (18 U.S.C. § 3184) in this Court.  (See
Dkt. 1.)  That same day, the Honorable Pedro V. Castillo,
United States Magistrate Judge for the Central District of
California, issued a warrant for GAMEZ SALAS's arrest.  On or about
March 11, 2026, the United States Marshals Service transferred GAMEZ
SALAS into their custody from the custody of the U.S. Bureau of
Prisons in Victorville, California, within the Central District of
California.

**III. ARGUMENT**

Like the extradition process as a whole, the determination of
whether to release a fugitive on bail is sui generis.  The federal
statutes governing extradition in the United States, 18 U.S.C. § 3181
et seq., do not provide for bail.  Further, the Bail Reform Act,
18 U.S.C. § 3141 et seq., does not apply because an extradition
proceeding is not a criminal case.[2]  See Kamrin v. United States, 725

---

[1] Extradition Treaty Between the Government of the United States
of America and the Government of the Republic of Chile, U.S.-Chile,
June 5, 2013, T.I.A.S. No. 16-1214 (the "Extradition Treaty").

[2]    The Bail Reform Act applies only to "offenses" in violation
of U.S. law that are triable in the courts of the United States.  See
*(footnote cont'd on next page)*

2

1  F.2d 1225, 1228 (9th Cir. 1984); In re Extradition of Perez-Cueva,
2  No. 16-MJ-0233, 2016 WL 884877, at *1 (C.D. Cal. Mar. 7, 2016).
3  Rather, case law provides that bail should be granted in an
4  extradition proceeding "only in the most pressing circumstances, and
5  when the requirements of justice are absolutely peremptory."
6  United States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (quoting
7  In re Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

### A.    Applicable Law

#### 1.    A Strong Presumption Against Bail Governs in an International Extradition Proceeding

Unlike in domestic criminal cases, "[t]here is a presumption
against bail in an extradition case."  Salerno v. United States, 878
F.2d 317, 317 (9th Cir. 1989); see also United States v. Snyder, No.
13-7082-mj, 2013 WL 1364275, at *2 (D. Ariz. Apr. 3, 2013) (noting
that presumption against bail in extradition is "well-established").
The Supreme Court established this presumption against bail in Wright
v. Henkel, explaining that when a foreign government makes a proper
request pursuant to a valid extradition treaty, the United States is
obligated to deliver the person sought after he or she is
apprehended:

> The demanding government, when it has done all that the
> treaty and the law require it to do, is entitled to the
> delivery of the accused on the issue of the proper warrant,
> and the other government is under obligation to make the
> surrender; an obligation which it might be impossible to

---

18 U.S.C. §§ 3141(a), 3142, 3156(a)(2).  Here, GAMEZ SALAS is not
charged with an "offense" within the meaning of 18 U.S.C. § 3156, but
rather, with offenses committed in violation of the law of the
requesting state, Chile.

1    fulfill if release on bail were permitted.  The enforcement

2    of the bond, if forfeited, would hardly meet the

3    international demand; and the regaining of the custody of

4    the accused obviously would be surrounded with serious

5    embarrassment.

6  190 U.S. 40, 62 (1903); accord Jimenez v. Aristiguieta, 314 F.2d

7  649, 653 (5th Cir. 1963) ("No amount of money could answer the

8  damage that would be sustained by the United States were the

9  appellant to be released on bond, flee the jurisdiction, and be

10 unavailable for surrender, if so determined.  The obligation of

11 this country under its [extradition] treaty with Venezuela is of

12 paramount importance."); United States ex rel. McNamara v.

13 Henkel, 46 F.2d 84, 84-85 (S.D.N.Y. 1912) (presentation of

14 forfeited bail to foreign nation "is ridiculous, if not

15 insulting").

16      The prudential reasons for this presumption against bail in

17 international extradition cases are clear and compelling.  When, as

18 here, a requesting country meets the conditions of the applicable

19 extradition treaty, the United States has an "overriding interest in

20 complying with its treaty obligations" to deliver the fugitive.  In

21 re Extradition of Garcia, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009);

22 see also Wright, 190 U.S. at 62.  It is imperative that the United

23 States be regarded in the international community as a country that

24 honors its agreements to be in a position to demand that other

25 nations meet their reciprocal obligations to the United States.  Such

26 reciprocity would be jeopardized if a fugitive were to flee after

27 being released on bond.  See In re Extradition of Martinelli

28 Berrocal, 263 F. Supp. 3d 1280, 1306 (S.D. Fla. 2017) ("[O]ur

4

Executive Branch has a vested interest in enforcing our own treaty obligations for fear that other treaty partners will refrain from doing so in the future.  And a difficult but necessary measure in carrying out that responsibility is to secure a wanted individual and surrender him or her to the foreign jurisdiction.").

> 2.    Fugitives Must Be Detained Unless They Establish "Special Circumstances" and Demonstrate that They Are Neither a Flight Risk nor a Danger to the Community

In light of the strong presumption against bail established in Wright and its progeny, international fugitives may not be released on bail unless they demonstrate that (1) they are neither a flight risk nor a danger to the community, and (2) "special circumstances" warrant their release.  See, e.g., In re Extradition of Antonowicz, 244 F. Supp. 3d 1066, 1068 (C.D. Cal. 2017); In re Extradition of Mainero, 950 F. Supp. 290, 294 (S.D. Cal. 1996).  "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act."  In re Extradition of Kin-Hong, 913 F. Supp. 50, 53 (D. Mass. 1996).  Further, the burden of showing "special circumstances" rests upon the fugitive.  See, e.g., Salerno, 878 F.2d at 317-18.

In evaluating a fugitive's risk of flight in the extradition context, courts have considered, among other things, the fugitive's financial means, ties with foreign countries, and incentive to flee based on the severity of the offense.  See, e.g., Martinelli Berrocal, 263 F. Supp. 3d at 1304; In re Extradition of Beresford-Redman, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that "well-educated and sophisticated" fugitive facing serious charges in

foreign country had both "incentive and ability to flee" and
therefore presented flight risk); In re Extradition of Patel, 08-430-
MJ-HUBEL, 2008 WL 941628, at *2 (D. Or. Apr. 4, 2008) (considering
fact that fugitive, a physician, had "more than sufficient assets
available with which to flee").

Crucially, the "special circumstances" inquiry is separate from
considerations of danger to the community or risk of flight. See,
e.g., Perez-Cueva, 2016 WL 884877, at *2 (special circumstances must
exist in addition to absence of risk of flight). "Even a low risk of
flight" is not a circumstance sufficiently "unique" to constitute a
special circumstance. Leitner, 784 F.2d at 161; see also Salerno,
878 F.2d at 317-18 (lack of flight risk "is not a criteria for
release in an extradition case"). Conversely, a fugitive who poses a
danger to the community or a risk of flight should be denied bail,
even in the face of special circumstances. See In re Extradition of
Siegmund, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

"Special circumstances must be extraordinary and not factors
applicable to all defendants facing extradition." Mainero, 950 F.
Supp. at 294 (citing In re Extradition of Smyth, 976 F.2d 1535, 1535-
36 (9th Cir. 1992)). Courts have considered and rejected a lengthy
list of would-be special circumstances, including but not limited to:

- The complexity of the pending litigation, see, e.g., United
States v. Kin-Hong, 83 F.3d 523, 525 (1st Cir. 1996);

- Non-violent nature of charged offenses, see, e.g., Snyder,
2013 WL 1364275, at *5; In re Extradition of Nacif-Borge,
829 F. Supp. 1210, 1220 (D. Nev. 1993);

6

- The fugitive's need to consult with an attorney and/or participate in pending litigation, see, e.g., Smyth, 976 F.2d at 1535-36;

- The fugitive's character, background, and/or ties to the community, see, e.g., In re Extradition of Noeller, No. 17 CR 664, 2017 WL 6462358, at *5 (N.D. Ill. Dec. 19, 2017); Beresford-Redman, 753 F. Supp. 2d at 1089; In re Extradition of Sidali, 868 F. Supp. 656, 658 (D.N.J. 1994);

- That the fugitive may have been living openly, see, e.g., Leitner, 784 F.2d at 160-61; In re Extradition of Pelletier, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4 (S.D. Fla. Nov. 16, 2009);

- Discomfort, special dietary needs, or medical concerns that can be attended to while incarcerated, see, e.g., Noeller, 2017 WL 6462358, at *8-9; Martinelli Berrocal, 263 F. Supp. 3d at 1301-02; United States v. Latulippe, No. 08-mj-59, 2008 WL 2704230, at *1 (D.N.H. July 3, 2008); In re Extradition of Kyung Joon Kim, No. 04-CV-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004); In re Extradition of Hamilton-Byrne, 831 F. Supp. 287, 290-91 (S.D.N.Y. 1992);

- U.S. citizenship or the pendency of naturalization or other immigration proceedings, see, e.g., Antonowicz, 244 F. Supp. 3d at 1072; In re Extradition of Knotek, No. 13-CV-9204-BRO-JCG, 2016 WL 4726537, at *7 (C.D. Cal. Sept. 8, 2016); In re Extradition of Orozco, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

- The fugitive's professional status, see, e.g., Pelletier, 2009 WL 3837660, at *3-4 (allegedly well-respected businessman); In re Extradition of Heilbronn, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) (highly trained doctor);

- The availability of electronic monitoring, see, e.g., In re Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn. 1997);

- Ordinary delay or delay occasioned by the fugitive during extradition proceedings, see, e.g., Salerno, 878 F.2d at 318; Antonowicz, 244 F. Supp. 3d at 1070; and

- The availability of bail for the same offense in the requesting country, see, e.g., Antonowicz, 244 F. Supp. 3d at 1070; Kyung Joon Kim, 2004 WL 5782517, at *2; Siegmund, 887 F. Supp. at 1386-87; but see Nacif-Borge, 829 F. Supp. at 1216-17.

Although in certain exceptional cases some of the above may have been deemed a "special circumstance," courts generally determine "special circumstances" to exist based on a confluence of factors, as opposed to any single consideration. Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

**B.  Analysis**

The United States respectfully requests that the Court detain GAMEZ SALAS without bond. GAMEZ SALAS cannot meet his burden of proving that he is not a flight risk or a danger to the community. Further, even if GAMEZ SALAS somehow could overcome this hurdle, the

1  United States is not aware of any "special circumstances" that would

2  justify bail in this case.

3        1.   GAMEZ SALAS Cannot Meet His Burden of Proving that He

4             Is Neither a Flight Risk nor a Danger to the Community

5        The serious nature of the kidnapping resulting in homicide

6  offense and other offenses with which GAMEZ SALAS is charged renders

7  him a significant danger to the community both here in the

8  United States and abroad if he were released from custody.  See,

9  e.g., Perez-Cueva, 2016 WL 884877, at *3 (seriousness of allegations

10 against fugitive "militates against release on bail").  As detailed

11 above and in the Complaint, GAMEZ SALAS is alleged to have directed

12 and planned the February 2024 kidnapping and murder in Santiago,

13 Chile, of a former Lieutenant in the Venezuelan military, and to have

14 played a leading role in an April 2024 deadly armed confrontation

15 that killed a Chilean police officer; February and June 2024

16 kidnappings for extortion; and a March 2024 attempted kidnapping,

17 among other offenses.  This dangerousness renders bail inappropriate.

18      In addition to being a significant danger to the community,

19 GAMEZ SALAS is a flight risk.  GAMEZ SALAS does not have lawful

20 immigration status in the United States and is subject to an order of

21 removal from the United States to Venezuela.  If he is released in

22 this matter, he will presumably be released into ICE custody.  If,

23 for whatever reason, he were fully released, he would have no

24 incentive to appear at his extradition hearing.  A fugitive charged

25 with crimes in another country is by definition in flight or

26 deliberately absent from that jurisdiction, and the fact that the

27 fugitive has evaded prosecution in that country is indicative of his

28 risk of flight in the United States.  Cf. United States v. Botero,

604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same-the avoidance of prosecution.") (citing Jhirad v. Ferrandina, 536 F.2d 478, 483 (2d Cir. 1976)).

Here, given the strength of Chile's case and the United States' relatively low burden of proof in extradition hearings, GAMEZ SALAS has strong incentive to flee further, whether to a third country or to an underground location within the United States. See, e.g., In re Extradition of Garcia, 761 F. Supp. 2d 468, 483 (S.D. Tex. 2010) ("The Court believes that [fugitive]'s risk of flight is beyond a 'tolerable risk.' He has virtually no incentive to appear at his extradition hearing, where, due to the Government's low burden of proof, there are significant risks that he will be formally extradited to Mexico."); In re Extradition of Adame, No. Misc. No. H-13-287, 2013 WL 1222115, at *3 (S.D. Tex. Mar. 25, 2013) (same). Indeed, GAMEZ SALAS has already shown incentive to flee by fleeing Chile to avoid prosecution.

Moreover, GAMEZ SALAS may be further incentivized to flee because he faces the prospect of serving a lengthy prison sentence in Chile. See, e.g., In re Extradition of Morrell, No. 3:24-MJ-05020-TLF, 2024 WL 756017, at *3 (W.D. Wash. Feb. 23, 2024) (prospect of significant jail time upon extradition supports a significant incentive to flee); In re Extradition of Shaw, No. 14-MC-81475-WM, 2015 WL 521183, at *9 (S.D. Fla. Feb. 6, 2015) (noting that "the [fugitive] is facing serious criminal sanctions in Thailand, which

10

1    fact provides him with a strong incentive to flee").  Here, the

2    charged offenses carry a potential maximum sentence of life

3    imprisonment.  Thus, no amount of bail would guarantee GAMEZ SALAS's

4    presence during his extradition proceedings.  The flight risk GAMEZ

5    SALAS poses is, alone, fatal to any bail application.

6              2.    GAMEZ SALAS Cannot Meet His Burden of Establishing

7                    "Special Circumstances" that Justify Bail

8        GAMEZ SALAS's risk of flight and danger to the community are a

9    sufficient basis for the Court to deny any forthcoming application

10   for bail.  However, even if the Court were satisfied that he is

11   neither a flight risk nor a danger to the community, the

12   United States is unaware of any "special circumstances" that would

13   justify bail in this case.

14       Notwithstanding the foregoing, should the Court be inclined to

15   grant bail in this case, the United States respectfully requests that

16   the Court submit special written findings as to those specific

17   matters that are found to constitute "special circumstances."

18   Moreover, to protect the ability of the United States to meet its

19   treaty obligations to the Government of Chile, the United States also

20   respectfully requests that the Court notify the parties within a

21   reasonable amount of time in advance of any contemplated release

22   order.

23   \\

24   \\

25   \\

26   \\

27   \\

28   \\

**IV.   CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court detain GAMEZ SALAS pending resolution of this extradition proceeding.


Dated: March 11, 2026            Respectfully submitted,

                                 TODD BLANCHE
                                 Deputy Attorney General

                                 BILAL A. ESSAYLI
                                 First Assistant United States Attorney

                                 ALEXANDER B. SCHWAB
                                 Assistant United States Attorney
                                 Acting Chief, Criminal Division


                                 */s/ John J. Lulejian*
                                 JOHN J. LULEJIAN
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

12

<u>**CERTIFICATE OF COMPLIANCE**</u>

The undersigned counsel of record for Plaintiff United States of America certifies that this brief contains <u>2,911</u> words, which complies with the word limit of L.R. 11-6.1.


Dated: March 11, 2026              Respectfully submitted,

                                   TODD BLANCHE
                                   Deputy Attorney General

                                   BILAL A. ESSAYLI
                                   First Assistant United States Attorney

                                   ALEXANDER B. SCHWAB
                                   Assistant United States Attorney
                                   Acting Chief, Criminal Division


                                   */s/ John J. Lulejian*
                                   JOHN J. LULEJIAN
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA